Cora C. FARLEY

v.

The UNITED STATES.

No. 447–52.

United States Court of Claims.

Jan. 11, 1955.

Peter Beter, Washington, D. C., for plaintiff.

Walter Kiechel, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant. Alfred J. Kovell, Paxinos, Pa., was on the brief.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This is a suit for night differential and overtime pay for overtime duty which plaintiff claims she was assigned to perform.

Between September 9, 1947 and May 24, 1952, plaintiff, a classified civil service employee, was employed as a correctional officer at the Federal Reformatory for Women, Alderson, West Virginia.

Plaintiff was assigned to one of the 15 brick 2-story cottages, each of which had 30 rooms for inmates, as well as kitchen and dining and other necessary facilities.

A correctional officer, assigned to each cottage, was charged with the general care and custody of the inmates, made requisition for supplies, supervised the work of the inmates, checked them in and out of the cottage, counted them, prepared a daily report of the actual count, and prepared various monthly reports as to the activities and conduct of the inmates. She had charge of the keys at all times, whether on regular or night-time assignment.

Among other duties the correctional officer kept the medicine cabinet locked, administered simple remedies for minor ailments and advised the officer of the day when hospitalization was needed, maintained discipline and counselled with those having emotional disturbances. At 9:30 p. m. the doors of the individual rooms were locked. The correctional officer in charge was required to remain

in the cottage overnight, being furnished a bedroom where she was permitted to sleep. Pay for the room was deducted from her pay for the overnight assignment.

Each officer worked regularly five days each week, eight hours per day, a total of 40 hours per week.

In addition each officer was required to remain overnight on alternate days of her regular assignment. Each officer was required to remain two nights one week and three nights the alternate week. It is this extra period that is in controversy.

The Rules and Regulations for the Operation of Cottages provided as to this overnight service as follows:

"When Correctional Officers are assigned to evening duty in a cottage they are to remain on duty (although permitted to go to sleep after 9:30) until the following morning or until they have been specifically relieved by others and the Chief Warder notified."

No compensation was paid for this overnight service.

This overnight service amounted to an average of 43 hours for each 2-week period. The nights of each week when it was performed immediately followed the full 8-hour regular day. The entire 43-hour bi-weekly service, if it be construed as a duty assignment, was in excess of the 40-hour regular weekly performance of duty.

The question is whether plaintiff was entitled to night differential and overtime pay for the 43 hours average bi-weekly time when she necessarily remained in charge in the cottage.

During these nighttime assignments the correctional officer was in direct charge of and responsible for the care and custody of the inmates. She was subject to calls from inmates and telephone calls from the officer of the day, the hospital and guards. She kept the keys to all the doors in the cottage and was required to lock the inmates in the rooms at 9:30 each evening, when she was permitted to retire, subject to the calls to which we have referred. There were sometimes as many as four babies in the cottage. Sometimes there would be none, due to the changes that had been made in the occupancy of the cottage. When she had calls from inmates due to illness or other distress, or was called upon to feed or care for the babies of the inmates, the plaintiff was disturbed as many as three or four times during an overnight assignment. Her telephone calls from the outside were not numerous, but any such call in an institution of this kind would naturally disturb her sleep. She had charge of the medicine cabinet and administered simple remedies, although when there was serious illness or disturbance the hospital officials would be called. Her sleep was naturally fitful and restless as she was subject to call at any time.

In these circumstances we cannot escape the conclusion that the correctional officer was on duty. The order itself stipulated that the officer should "remain on duty." Her freedom of choice to follow her own habits was restricted for the benefit of the defendant. The plaintiff had a home, a husband and a child, but she was required to remain away from them and restricted to a cottage at a reformatory in which there were 30 inmates and sometimes extra ones sleeping in the hallway or on the porch. General Electric Co. v. Porter, 9 Cir., 208 F.2d 805.

Plaintiff's claim is made under the Federal Employees Pay Act of 1945, 59 Stat. 296, as amended, 60 Stat. 218, 5 U.S.C.A. §§ 911, 912, 921. Section 201 of this act requires the payment of overtime in addition to basic compensation for all hours of employment officially ordered or approved in excess of 40 hours per week, and section 301 provides for 10 percent additional in excess of the basic rate of compensation when the duty is performed during the nighttime. We quote the words of the Supreme Court in two cases as follows:

"Readiness to serve may be hired, quite as much as service itself, and

time spent lying in wait for threats to the safety of the employer's property may be treated by the parties as a benefit to the employer. Whether time is spent predominantly for the employer's benefit or for the employee's is a question dependent upon all the circumstances of the case." Armour & Co. v. Wantock, 323 U.S. 126, 133, 65 S.Ct. 165, 168, 89 L.Ed. 118.

"Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged. * * * 'Hours worked are not limited to the time spent in active labor but include time given by the employee to the employer. * * *'" Skidmore v. Swift & Co., 323 U.S. 134, 137, 138, 65 S.Ct. 161, 163, 89 L.Ed. 124.

■ Defendant calls attention to the fact that the plaintiff agreed as a condition to her employment that she would perform the nighttime duty. While simple conditions incident to employment may properly be made, we do not think that an agreement to work overtime without pay can be enforced contrary to the provisions of a clear statute limiting the work to be performed to 40 hours per week and providing overtime pay for extra duty. The issue remains still the single one of whether the plaintiff was on duty in excess of 40 hours per week.

The regulation specifically requires that the officer remain on duty. It must be remembered that this service was in a reformatory where there was no freedom for recreation or normal living habits and plaintiff was not free to engage during that period in any of the normal rounds of activity in which the average person desires to engage.

We have always heard that the way to judge the problems of another individual is, insofar as possible, to put oneself in the other's place.

It is easy to understand how some simple requirement, such as wearing a certain kind of uniform, a badge of authority, or some other means of identification, might be construed as a condition to the right to work for an organization of this kind. But try to imagine if you can, if anyone can, a reasonable creature in being after a regular 8-hour stint, which is all the work the law allows in any one day, deciding, by choice, to spend two and one-half full nights of supposedly leisure time each week in charge of 30 people all of whom had committed offenses, some being narcotic violators, and being subject to call from inmates, and telephone calls from the officer of the day, the hospital and the guards, to say nothing of administering to minor ailments and disturbances by babies, who were too young to read and respect the signs which said "Quiet, please," and then trying to classify it all as a simple condition of the right to work.

Then visualize working under the type of prison officials who would be so inconsiderate of the natural fatigue of an American woman of normal sensibilities after eight full hours of work, as to undertake to so classify the ordeal, and one will have a reasonably accurate picture of what actually occurred.

Defendant urges that it was provided that plaintiff might have compensatory time off for the extra duty but it seems to us she made the normal interpretation when she interpreted this as covering calls when inmates undertook to escape, or some emergency arose which called for some special activity in addition to the regular duties which she performed on call. In fact, her letter accepting the condition contained the following statement:

"I hereby express my willingness to accept overtime work *for emergencies* on the basis of compensatory time off." [Emphasis supplied.]

The buildings were located on a campus which was surrounded by a fence which could be climbed with some effort. It was natural that some of the inmates would not be happy and would undertake to escape. The plaintiff was required by the regulations to make a report at midnight as to whether all of the in-

565

mates were safely in their quarters. This report, however, according to custom, was usually made at 9:30 p. m. There were other duties which the correctional officer was required to perform in connection with inmates who were to be released or transferred to the hospital, or for changes that might be necessary.

■ Considering the entire picture presented by the facts in this case we hold that plaintiff was on duty during the extra hours and is entitled to nighttime differential and overtime pay for the time when she was on duty at night in excess of 40 hours per week, less the brief periods when she is shown to have claimed and received compensatory time.

Entry of judgment is suspended pending the filing of a stipulation by the parties, or a report by the General Accounting Office showing the amount due plaintiff in accordance with this opinion.

It is so ordered.

LARAMORE, MADDEN, WHITAKER and LITTLETON, Judges, concur.