Helen H. ENGLAND, Eva J. Hampstead, Dorothy Walker Hanauer, Virginia C. Huston, Mary W. Jackson, Mary Ann Johnston, Mary Lou McEver, Florence E. Payne,

v.

The UNITED STATES.

No. 556-52.

United States Court of Claims.

Jan. 31, 1956.

Peter Beter, Washington, D. C., for plaintiffs.

Walter Kiechel, Jr., Washington, D. C., with whom was Warren E. Burger, Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and LARAMORE, Judges.

JONES, Chief Judge.

This suit is for night differential and overtime pay for overtime duty which plaintiffs allege they were assigned to perform as correctional officers at the Federal Reformatory for Women at Alderson, West Virginia, and for which work they were not paid. The claims of the several plaintiffs cover periods between November 1946 and September 1952.

The duties performed by the plaintiffs were exactly the same as the duties performed by the plaintiff in the case of Farley v. United States, 127 F.Supp. 562, 131 Ct.Cl. 776.

A correctional officer was assigned to each cottage in a group of fifteen 2-story brick cottages each of which had 30 rooms for inmates, as well as kitchen, dining and other necessary facilities.

Each officer worked regularly five days each week, eight hours per day, a total of 40 hours per week, which is the

maximum work time allowed per week. In addition to the 40 hour regular work stint each week, each officer was required to remain in charge of the cottage two nights one week and three nights in the alternate week.

The rules and regulations for the operation of the cottages provided for this overnight service as follows:

"When Correctional Officers are assigned to evening duty in a cottage they are to remain on duty (although permitted to go to sleep after 9:30) until the following morning or until they have been specifically relieved by others and the Chief Warder notified."

No compensation was paid for this overnight service which averaged 43 hours for each 2-week period. This overnight service was performed immediately following the full 8-hour regular work day and was in excess of the 40-hour weekly regular performance of duty.

As was disclosed in the Farley case, the following duties, among others, were required by these nighttime assignments:

"During these nighttime assignments the correctional officer was in direct charge of, and responsible for the care and custody of the inmates. She was subject to calls from inmates and telephone calls from the officer of the day, the hospital and guards. She kept the keys to all the doors in the cottage and was required to lock the inmates in the rooms at 9:30 each evening, when she was permitted to retire, subject to the calls to which we have referred. There were sometimes as many as four babies in the cottage. Sometimes there would be none, due to the changes that had been made in the occupancy of the cottage. When she had calls from inmates due to illness or other distress, or was called upon to feed or care for the babies of the inmates, the plaintiff was disturbed as many as three

or four times during an overnight assignment. Her telephone calls from the outside were not numerous, but any such call in an institution of this kind would naturally disturb her sleep. She had charge of the medicine cabinet and administered simple remedies, although when there was serious illness or disturbance the hospital officials would be called. Her sleep was naturally fitful and restless as she was subject to call at any time." 127 F.Supp. at page 563, 131 Ct.Cl. at page 778.

Following the decision of the court in the Farley case the General Accounting Office upon request calculated the amount which each of the correctional officers was entitled to receive for this extra duty based upon this court's opinion in the Farley case.

Defendant has moved for summary judgment as to plaintiff Mary W. Jackson, or in the alternative for judgment for plaintiff Jackson in an amount calculated in accordance with the fringe benefit provisions provided for in the act of September 1, 1954, 68 Stat. 1105, 5 U.S.C.A. § 1072a et seq., rather than in accordance with this court's opinion in the Farley case. Defendant further asks that judgment for the other plaintiffs herein not be rendered pending the court's decision on this motion in the Jackson case, asserting that some of the other claimants are in the same status as Mary W. Jackson.

Plaintiffs have filed a cross motion for summary judgment in favor of each of the several plaintiffs in this case, the amount of such judgments to be computed on the basis of this court's decision in the Farley case.

The defendant seeks to distinguish the instant claim of Miss Jackson from the Farley claim on the ground that Mrs. Farley had a home, a husband and a child, while Miss Jackson is a single woman. It is contended that while Mrs. Farley used her room only when on as-

signment, Miss Jackson used her room throughout the work week and in effect made it her home.

We find that the difference in the amount of the use of the room in the circumstances did not make the extra work other than what it was, i. e., a duty assignment.

During the greater portion of the time that the plaintiffs worked, each was required to pay a small sum for the use of the room, regardless of whether it was used, this amount being taken out of the regular pay.

The defendant has filed an affidavit by the Warden, Nina Kinsella, that the record shows that the plaintiff Jackson was assigned Room No. 1 in Cottage No. 12 of the reformatory and that said quarters and the keys thereto were retained by plaintiff until the date of her retirement, January 31, 1955. The Associate Warden, Margaret C. Jones, signed an affidavit that she had personal knowledge that the plaintiff Jackson resided in her assigned quarters and maintained her residence at the reformatory during the period in question.

The plaintiff Jackson filed an affidavit that the Federal Reformatory for Women had never been a home to her; that for the past five years her home had been in Lewisburg, West Virginia, about 16 miles from Alderson; that she and her cousin owned the house together and still own it, and that prior to that time her home had been on her father's farm about 20 miles from Alderson, which farm she and her sisters had inherited from her father; that all of the correctional officers had to sign cards authorizing a deduction from their pay for room rent; that she did not always room and work in the same cottage, and that she considered staying in the inmates' cottage an assignment which she had to accept if she were to keep her position.

Neither of the affidavits filed by the defendant asserts that plaintiff Jackson regarded the reformatory as her home. They merely stated that she kept her residence there.

In most jurisdictions there is a difference between a residence and a home. Generally speaking, a person may have two residences, but only one domicile or home. The latter is generally regarded as the place where a person resides with the intention of making it his permanent place of abode.

We cannot conceive of any normal person choosing a federal reformatory as a place for a permanent home. It may be, as the poet said, that "stone walls do not a prison make, nor iron bars a cage", but certainly a brick cottage containing 30 unfortunate persons who had been incarcerated for alleged violations of law would not make an ideal home.

In the case of Orent v. Equitable Life Assur. Soc. of United States, 268 App. Div. 299, 51 N.Y.S.2d 115, 118, the insurance company sought to avoid payment of a policy on the ground that in listing his prior home addresses in his application, the insured had failed to list the Atlanta Penitentiary where he had been imprisoned for three years during the period covered by the application. In rejecting the insurance company's contention the court said:

"This contention is unsound. Words used in an application for insurance must be construed according to their ordinary usage. We do not regard a penitentiary as a home."

Even defendant's affidavits indicate that as soon as plaintiff Jackson retired she no longer remained at the reformatory. Evidently she didn't intend to make it her permanent home. Perhaps since she was required during most of the period to pay for the room she may have decided that she might as well make use of it during her work week.

Even if plaintiff Jackson had temporarily made the reformatory her home we do not think that fact should deprive her of compensation for the extra service which she was required to perform.

In addition to the duties which are set out in the above quotation from the Farley case, Miss Jackson was required to

lock each of the rooms in the cottage of which she had charge during the nights in which she was on duty. She was required to report any attempts to escape, and was subject to call for any of the numerous duties which have been outlined, as well as some others which are mentioned in the Farley case.

We think it would be an utter waste of time and a needless expense to both litigants to refer this case to a commissioner for further hearings when it is shown by the pleadings and the record that the duties were exactly the same in the two cases. We conclude that plaintiff Jackson's overnight assignments constituted duty time for the same reasons given in the Farley case despite Miss Jackson's use of the room on occasions other than when she was assigned to overnight duty.

With respect to defendant's alternative motion for judgment for Miss Jackson in a reduced amount on the basis of the fringe benefit provisions set out in the act of September 1, 1954, limiting her premium compensation to 25 percent, we make the short answer that the 1954 act was not made retroactive. We have no legislative authority and must apply the law as it existed during the period when the services were rendered.

The defendant's motions are overruled. The plaintiffs' motion is granted and summary judgment will be entered in favor of the following plaintiffs in the respective amounts as listed:

| | |
|---|---|
| Helen H. England | $ 4,132.55 |
| Eva J. Hampstead | 1,168.37 |
| Dorothy Walker Hanauer | 2,957.35 |
| Virginia C. Huston | 3,991.62 |
| Mary W. Jackson | 11,781.57 |
| Mary Ann Johnston | 1,910.60 |
| Mary Lou McEver | 2,312.75 |
| Florence E. Payne | 4,364.72 |

It is so ordered.

LARAMORE, MADDEN, WHITAKER, and LITTLETON, Judges, concur.