# United States Court of Appeals for the Federal Circuit

05-5104

JOHN DOE,
on behalf of themselves and
all others similarly situated,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

Robert A. Van Kirk, Williams & Connolly LLP, of Washington, DC, argued for plaintiffs-appellants. With him on the brief was Daniel D. Williams. Of counsel on the brief was Paul Y. Kiyonaga, Kiyonaga & Soltis, P.C., of Washington, DC.

Alisa B. Klein, Attorney, Appellate Staff, Civil Division, United States Department of Justice, of Washington, DC, argued for defendant-appellee. With her on the brief were Peter D. Keisler, Assistant Attorney General, Gregory G. Katsas, Deputy Assistant Attorney General; and Mark B. Stern and Hillary A. Stern, Attorneys. Of counsel were Michael S. Raab and Mark R. Freeman, Attorneys; and David M. Cohen, Director, and Kathryn A. Bleecker, Assistant Director, Commercial Litigation Branch.

Appealed from: United States Court of Federal Claims

Judge Robert H. Hodges, Jr.

# United States Court of Appeals for the Federal Circuit

05-5104

JOHN DOE,
on behalf of themselves and
all others similarly situated,

Plaintiffs-Appellants,

v.

UNITED STATES,

Defendant-Appellee.

_____

DECIDED:  September 11, 2006

_____

Before RADER, SCHALL, and PROST, Circuit Judges.

SCHALL, Circuit Judge.

Plaintiff John Doe and a class of similarly situated individuals (hereinafter collectively, "the Doe plaintiffs") appeal from the September 17, 2004 judgment of the United States Court of Federal Claims dismissing their complaint.  Doe v. United States, No. 98-896 C, slip op. (Fed. Cl. Sept. 17, 2004) ("Doe Summary Judgment Order").  The Doe plaintiffs are Department of Justice ("DOJ") attorneys who sued the government for alleged violations of the overtime provisions of the Federal Employees Pay Act of 1945

("FEPA"), ch. 212, 59 Stat. 295 (codified as amended at 5 U.S.C. §§ 5542, 5545, 5546 (2000)).[1]  The Doe plaintiffs claim that the Court of Federal Claims erred when it dismissed their claims for overtime pay pursuant to 5 U.S.C. § 5542(a), administratively uncontrollable overtime ("AUO") pay pursuant to 5 U.S.C. § 5545(c)(2), and holiday pay pursuant to 5 U.S.C. § 5546(b).  We discern no such error and therefore affirm the judgment of the Court of Federal Claims dismissing the Doe plaintiffs' complaint.

BACKGROUND

I.

The Doe plaintiffs are a class of over 9,000 DOJ attorneys who seek pay for overtime work and holiday work performed between 1992 and 1999.  Doe v. United States, 372 F.3d 1347, 1349 & n.1 (Fed. Cir. 2004) ("Doe V").  The parties do not dispute that the Doe plaintiffs worked overtime and on holidays during this period.  Id. at 1350.  Further, there is evidence supporting the Doe plaintiffs' assertion that DOJ expected and induced the Doe plaintiffs to work overtime and to work on holidays.  However, the Doe plaintiffs did not receive any written order or approval from DOJ before performing this work.  Id. at 1362-64.  Even though they did not receive written order or approval, the Doe plaintiffs allege that they are entitled to overtime, AUO, and holiday pay under FEPA because they were expected and induced to work beyond the regularly scheduled work week.

---

[1]    FEPA has not been amended in relevant part since 1999, when the events relevant to this appeal took place.  Thus, all references are to the 2000 version of the United States Code unless otherwise indicated.

II.

FEPA includes specific provisions governing each of the Doe plaintiffs' three claims.

Section 5542(a) contains the general eligibility requirements for overtime pay under FEPA. Section 5542(a) provides in relevant part:

> For full-time, part-time and intermittent tours of duty, hours of work officially <u>ordered or approved</u> in excess of 40 hours in an administrative workweek, or . . . in excess of 8 hours in a day, performed by an employee are overtime work and shall be paid for, except as otherwise provided by this subchapter[.]

5 U.S.C. § 5542(a) (emphasis added). As emphasized above, overtime hours must be "ordered or approved" in order to be compensable. The applicable regulation repeats this requirement by stating that overtime pay must be "[o]fficially ordered or approved." 5 C.F.R. § 550.111(a)(1) (2006).[2] Section 550.111(c) clarifies that "[o]vertime work in excess of any included in a regularly scheduled administrative workweek may be ordered or approved only <u>in writing</u> by an officer or employee to whom this authority has been specifically delegated." (emphasis added). As we noted in <u>Doe V</u>, a regulation substantially similar to the present section 550.111(c) has been in effect since 1945, when FEPA was enacted, until the present. 372 F.3d at 1352.

Pursuant to 5 U.S.C. § 5545(c)(2), the head of an agency may provide AUO pay instead of other forms of premium pay such as overtime pay under section 5542(a). Section 5545(c)(2) provides in relevant part:

---

[2] The relevant provisions of the Code of Federal Regulations have not been amended since 1999, when the events relevant to this appeal took place. Thus, all references are to the 2006 version of the Code of Federal Regulations.

The head of an agency, with the approval of the Office of Personnel Management, *may* provide that—

. . .

(2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require the employee to remain on duty, <u>shall</u> receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for regularly scheduled overtime, night, and Sunday duty, and for holiday duty. . . .

(emphases added). The Office of Personnel Management ("OPM") has promulgated regulations governing AUO payment policy at 5 C.F.R. §§ 550.151-.163. Sections 550.154 and 550.162-.163 set forth rates for premium pay for AUO and other payment provisions specific to AUO. Sections 550.151-.153 establish criteria for determining which positions meet the statutory requirements for AUO pay.

Under the regulations, OPM requires that agencies determine prospectively which positions meet the criteria for AUO pay set forth in sections 550.151-.153. Specifically, the applicable regulation states:

The head of each agency, or an official who has been delegated authority to act for the head of an agency in the matter concerned, is responsible for . . . . [d]etermining in accordance with section 5545(c) of Title 5, United States Code, and this subpart, which employees shall receive premium pay on an annual basis under § 550.141 or § 550.151. These determinations may not be retroactive.

5 C.F.R. § 550.161(b).

Pursuant to section 550.161(b), DOJ published Order 1551.4A in 1975. The order sets forth a general policy of providing AUO pay to persons meeting the statutory requirements in a section entitled "POLICY." Paragraph 6 of the order elaborates on

the requirements for receiving AUO pay and repeats much of the language of 5 C.F.R. § 550.151-.153. Paragraph 7 is entitled "AUTHORIZED PERSONS" and provides:

> Premium pay under this order may be paid to eligible employees assigned to the classes of positions listed in Appendix 1 to this order. The Assistant Attorney General for Administration will authorize administratively uncontrollable overtime pay for additional classes of positions upon the request of a bureau director which shows that the positions meet the criteria set out in paragraph 6.

Appendix 1 lists 6 positions: (1) Airplane pilot engaged in air-to-ground border patrol activities, (2) Border patrol agent, (3) Criminal investigator, (4) General investigator, GS-9 and above, (5) Officer-in-charge, Immigration and Naturalization Service domestic office, engaged in investigative duties, and (6) Immigration officer, foreign area, engaged in investigative duties. "Attorney" is not listed.

5 U.S.C. § 5546(b) concerns eligibility for holiday pay under FEPA. Section 5546(b) provides in relevant part:

> (b) An employee who performs work on a holiday . . . is entitled to pay at the rate of his basic pay, plus premium pay at a rate equal to the rate of his basic pay, for that holiday work which is not—
> (1) in excess of 8 hours; or
> (2) overtime work as defined by section 5542(a) of this title.

The regulations governing authorization for holiday pay provide as follows:

> (a) Except as otherwise provided in this subpart, an employee who performs holiday work is entitled to pay at his or her rate of basic pay plus premium pay at a rate equal to his or her rate of basic pay for that holiday work that is not in excess of 8 hours.
> (b) An employee is entitled to pay for overtime work on a holiday at the same rate as for overtime work on other days.
> (c) An employee who is <u>assigned to duty</u> on a holiday is entitled to pay for at least 2 hours of holiday work.

05-5104                                    5

(d) An employee is not entitled to holiday premium pay while engaged in training, except as provided in § 410.402 of this chapter.

5 C.F.R. § 550.131 (emphasis added).  Section 550.132 also concerns holiday pay.  It is entitled "Relation to overtime, night, and Sunday pay" and provides:

(a) Premium pay for holiday work is in addition to overtime pay or night pay differential, or premium pay for Sunday work payable under this subpart and is not included in the rate of basic pay used to compute the overtime pay or night pay differential or premium pay for Sunday work.
(b) Notwithstanding premium pay for holiday work, the number of hours of holiday work are included in determining for overtime pay purposes the total number of hours of work performed in the administrative workweek in which the holiday occurs.
(c) The number of regularly scheduled hours of duty on a holiday that fall within an employee's basic workweek on which the employee is excused from duty are part of the basic workweek for overtime pay computation purposes.

(emphasis added).  "Holiday work" is defined at 5 C.F.R. § 550.103 as "nonovertime work performed by an employee during a regularly scheduled daily tour of duty on a holiday designated in accordance with § 610.202 of this chapter."  Section 610.202 is entitled "Determining the holiday" and sets forth guidelines for determining which day of a week is to be treated as an employee's holiday.

III.

On March 24, 2000, in Doe v. United States, 46 Fed. Cl. 399, 402 (2000) ("Doe I"), the Court of Federal Claims granted the government's motion to dismiss the Doe plaintiffs' claims for AUO pay for lack of jurisdiction under the Tucker Act.[3]  In Doe I, the

_____

[3]  In Doe I, the court did not expressly state that it based its decision to dismiss on the lack of Tucker Act jurisdiction.  See Doe I, 46 Fed. Cl. at 402.  However, we believe that the basis of the court's decision was jurisdictional.  First, in a footnote the court rejected the Doe plaintiffs' argument that the Court of Federal Claims "may

Court of Federal Claims began by examining the language of section 5545(c)(2), which governs AUO pay, and found that the language of the statute was not in and of itself mandatory. Id. at 401. The court found that "[t]he discretion to determine whether an employee will be provided premium pay under this section rests with the head of the Agency, with the approval of the Office of Personnel Management." Id. Turning to the agency's policies, the court noted that DOJ Order 1551.4A concerned premium pay for AUO and that "Attorney" was not listed as a covered position in Appendix 1 to the order. Id. Based on the foregoing, the court held that there was no requirement that the agency pay compensation to attorneys and dismissed the Doe plaintiffs' claim for AUO pay. Id. at 402. The court's decision dismissing the Doe plaintiffs' claims for AUO pay in Doe I has not been appealed previously.

The Doe plaintiffs' claims for overtime pay under section 5542 and holiday pay under section 5546(b) have already been the subject of several decisions in the Court of Federal Claims and one appeal. On September 1, 2000, the Court of Federal Claims denied the government's motion to dismiss the Doe plaintiffs' claims for overtime pay under section 5542(a) and holiday pay under section 5546(b). Doe v. United States, 47 Fed. Cl. 594, 595 (2000) ("Doe II"). The court then granted the Doe plaintiffs' motion for summary judgment on the issue of liability and denied the government's cross-motion. Doe v. United States, 54 Fed. Cl. 404, 418 (2002) ("Doe III"). The court held that DOJ

_____

(Cont'd. . . .)
exercise jurisdiction over claims that it would not have jurisdiction to hear standing alone when necessary to effectuate judgment over an entire claim." Id. at 402 n.4. This suggests that the court dismissed the AUO claim for lack of jurisdiction. Second, the court's determination that section 5545(c)(2) is discretionary suggests that the court dismissed the AUO claim because it found section 5545(c)(2) was not money-mandating as required for Tucker Act jurisdiction.

"ordered and approved" overtime within the meaning of section 5542 by expecting and inducing attorneys to work more than forty hours a week. Id. at 418. Doe III makes no mention of holiday pay under section 5546(b). However, the motion granted was for summary judgment—not partial summary judgment.

We granted the government's petition for interlocutory appeal, Doe v. United States, 67 Fed. Appx. 596, 597 (2003) ("Doe IV"), and reversed the Court of Federal Claims's grant of summary judgment in Doe III, Doe V, 372 F.3d at 1364. The focus of our decision in Doe V was the Doe plaintiffs' claim for overtime pay under section 5542(a). In Doe V, we examined a long line of cases interpreting the written order requirement for overtime pay under section 5542(a). Doe V, 372 F.3d at 1352-54. We noted that Anderson v. United States, 136 Ct. Cl. 365 (1956) ("Anderson I"), was the first of a line of cases in which the Court of Claims awarded overtime pay under FEPA to employees who had been induced to work overtime without any written order or authorization. Doe V, 372 F.3d at 1354. We found that the Anderson line of cases "also suggested that equitable considerations prevented the government from denying overtime compensation where it 'induced' overtime work." Id. We then determined that Schweiker v. Hansen, 450 U.S. 785 (1981), and Office of Personnel Management v. Richmond, 496 U.S. 414 (1990), effectively overruled Anderson I and its progeny. Doe V, 372 F.3d at 1355-57. We held that "the Anderson line of cases is no longer good law and that the written order requirement is not invalid on the ground that it imposes a procedural requirement that limits the right to overtime compensation under the statute or because it is inequitable." Id. at 1357. We then held that the written order requirement set forth at 5 C.F.R. § 550.111(c) was more than a mere administrative

instruction, id. at 1358, and that the regulation was entitled to deference under Chevron, U.S.A., Inc. v. Natural Resources Defense Council, 467 U.S. 837, 842-43 (1984). Doe V, 372 F.3d at 1362. After upholding the validity of the regulation, we examined whether the writing requirement had been met by DOJ's actions. Id. at 1362-64. On this point, we found that many of the Doe plaintiffs' arguments merely repeated their previously-rejected contentions that the written order requirement was invalid or merely an administrative instruction. Id. at 1362. We found that the documents that the Doe plaintiffs asserted gave them written authorization to work overtime, such as the United States Attorney's Manual, did not actually authorize overtime work. Id. at 1363. We also rejected the Doe plaintiffs' argument that the keeping of two sets of time records, one for pay purposes and one for determining actual hours worked, was evidence of written authorization and approval. Id. at 1363-64. We found instead that these records merely showed that the agency had awareness that attorneys worked extra hours—not that they had been authorized to receive overtime pay for working extra hours. Id. at 1364. Based on the foregoing, we not only reversed the grant of summary judgment in favor of the Doe plaintiffs, but also held that summary judgment should have been granted in favor of the government because the Doe plaintiffs' overtime was not "ordered or approved" as required by section 5542(a). Id. at 1349, 1364. Although we granted summary judgment on liability, we made no mention in Doe V of holiday pay under section 5546(b).

Pursuant to our direction in Doe V, the Court of Federal Claims directed an entry of summary judgment in favor of the government. Doe Summary Judgment Order, slip op. at 1. The Doe plaintiffs then filed a motion for reconsideration before the Court of

Federal Claims in which they argued that all three of their claims—for AUO pay, overtime pay, and holiday pay—survived our decision in Doe V. The Court of Federal Claims rejected the argument, holding that the doctrine of the law of the case barred reconsideration of the overtime pay claim and that the holiday pay claim was barred by implication. Doe v. United States, 63 Fed. Cl. 798, 804 (2005) ("Doe VI"). Thus, the Court of Federal Claims denied the Doe plaintiffs' motion for reconsideration. Id.

The Doe plaintiffs now appeal (1) the dismissal of the AUO pay claim in Doe I and (2) the grant of summary judgment in favor of the government on the overtime and holiday pay claims in the Doe Summary Judgment Order. We have jurisdiction over the Doe plaintiffs' appeal pursuant to 28 U.S.C. § 1295(a)(3).

## DISCUSSION

### I.

We review de novo the Court of Federal Claims's grant of summary judgment in favor of the government. Info. Sys. & Networks Corp. v. United States, 437 F.3d 1173, 1176 (Fed. Cir. 2006). We also review de novo the Court of Federal Claims's dismissal of a claim for lack of jurisdiction. Samish Indian Nation v. United States, 419 F.3d 1355, 1363 (Fed. Cir. 2005); Doe v. United States, 100 F.3d 1576, 1579 (Fed. Cir. 1996).

### II.

We begin with the Doe plaintiffs' claims for overtime pay under section 5542. The Doe plaintiffs argue that the Court of Federal Claims erred in dismissing their claims for overtime pay under section 5542 because they had an alternative theory of liability that was not addressed in our decision in Doe V. They characterize their alternative theory as an "as applied" challenge to 5 C.F.R. § 550.111(c)'s requirement of

written approval for overtime pay. Instead of arguing that 5 C.F.R. § 550.111(c) is invalid, the Doe plaintiffs argue that DOJ effectively eliminated their ability to acquire a written order or approval for working overtime from a higher level official, as required by the regulation. Therefore, they argue, their overtime should be considered authorized and approved. This argument was not foreclosed by Doe V, the Doe plaintiffs urge, because it was not raised in the certified order for the interlocutory appeal that led to that decision. They argue that Doe V only overruled the Anderson I line of cases to the extent that the cases held the writing requirement invalid. In contrast, the Doe plaintiffs argue that the Doe V court "said nothing about whether an agency could avoid its obligations under FEPA by refusing to implement a reasonable or rational system for obtaining the very writings the Court held were required." Appellants' Br. at 48. Thus, the Doe plaintiffs contend that cases supporting their "as applied" challenge, such as Adams v. United States, 162 Ct. Cl. 766 (1963), Bilello v. United States, 174 Ct. Cl. 1253 (1966), and Anderson v. United States, 201 Ct. Cl. 660 (1973) ("Anderson II"), remain good law.

The Doe plaintiffs also argue that they should be allowed to modify their claims for overtime pay under section 5542 because Doe V changed the controlling legal standard. The Doe plaintiffs argue that the fact that Hansen, 450 U.S. 785, and Richmond, 496 U.S. 414, the Supreme Court cases that overruled Anderson I, predate their complaint makes no difference because Anderson I was continually relied upon until Doe V.

The government counters that Doe V forecloses any consideration of the "alternative arguments" presented by the Doe plaintiffs. It recites our holding in Doe V

that no compensation could be awarded for work that was not "ordered and approved in strict compliance with [section 550.111(c)]." At the same time, it argues that the Doe plaintiffs are merely repeating the same argument they raised in Doe V: that "the governing OPM regulation should be disregarded in light of the government's asserted misconduct." In support of this contention, the government recites passages in the Doe plaintiffs' briefs in the Doe V appeal that are nearly identical to passages in the present briefs. Contrary to the Doe plaintiffs' arguments, the government argues, Doe V rejected both the Anderson notion that a writing requirement was invalid and that equitable considerations, such as the failure to implement a workable system for authorizing overtime, could entitle workers to overtime even without written authorization. Appellee's Br. at 28-29 (citing Doe V, 372 F.3d at 1355).

The government contends that the Doe plaintiffs' request that they be allowed to amend their previous arguments to accommodate a new legal standard should not be entertained. The government argues that the Doe plaintiffs made the same arguments in their petition for a rehearing in Doe V and that because rehearing was not granted in that case, they should not be able to get a rehearing now. Further, the government asserts that the denial of the petition for rehearing was correct because Doe V did not create a new legal standard. Rather, Doe V required compliance with 5 C.F.R. § 550.111(c), which has been in effect since 1945. The government argues that the Doe V panel considered evidence purportedly showing compliance with section 550.111(c)'s writing requirement at the Doe plaintiffs' request. The government contends that the Doe V panel rejected the Doe plaintiffs' argument, foreclosing further consideration of the issue.

We agree with the government that <u>Doe V</u> previously determined that the Doe plaintiffs do not have a viable claim for overtime pay under section 5542 and therefore forecloses the Doe plaintiffs' current argument that DOJ's system for acquiring written authorization pursuant to section 550.111(c) is unreasonable. This "as applied" argument is foreclosed by our finding in <u>Doe V</u> that <u>Anderson I</u>, 136 Ct. Cl. 365, was overruled by the Supreme Court's decisions in <u>Hansen</u>, 450 U.S. 785, and <u>Richmond</u>, 496 U.S. 414. <u>Doe V</u>, 372 F.3d at 1357. In <u>Anderson I</u>, the employer induced employees to work overtime and then refused payment because of a written approval requirement. 136 Ct. Cl. at 371. The <u>Anderson I</u> court struck down the writing requirement. <u>Id.</u> In <u>Doe V</u>, we held that <u>Anderson I</u> had been overruled to the extent that it held that "the OPM regulation was invalid because it added a procedural writing requirement to the substantive requirements of FEPA <u>or</u> because the result was inequitable." <u>Doe V</u>, 372 F.3d at 1355 (emphasis added). In essence, we upheld the writing requirement as valid <u>and</u> stated that any equity-based attack to the reasonableness of the writing requirement must fail. The Doe plaintiffs' argument in this appeal is nothing but an equity-based attack on the reasonableness of the writing requirement because the Doe plaintiffs merely repeat the equity-based arguments that we rejected in <u>Doe V</u>. In <u>Doe V</u>, they argued that it was inequitable to encourage overtime that was foreclosed by a writing requirement. Now they argue that it is inequitable to encourage overtime that was foreclosed by a writing requirement that was practically impossible to meet. The latter is merely an extension of the former, which we have already rejected. <u>See</u> <u>id.</u>

The Doe plaintiffs' reliance on Adams, 162 Ct. Cl. 766, Bilello, 174 Ct. Cl. 1253, and Anderson II, 201 Ct. Cl. 660, is also misplaced. In Doe V, we classified Adams as one of the Anderson I, 136 Ct. Cl. 365, line of cases, which was overruled by Hansen and Richmond. Doe V, 372 F.3d at 1354. We cited Bilello in Doe V for the proposition that overtime that was approved only by a supervisor who lacked authority to approve the overtime was not compensable. Id. at 1363. Thus, our citation to Bilello in Doe V was not an endorsement of attacks on the reasonableness of agency implementation of a regulation like the one the Doe plaintiffs presently challenge. In the Anderson II decision, the Court of Claims interpreted "regularly scheduled" broadly to include overtime induced by unauthorized persons because the court was "reluctant to impute to the VA an intent to frustrate the apparent will of Congress that overtime work shall be paid for." 201 Ct. Cl. at 664. The Doe plaintiffs quote this portion of Anderson II for the proposition that when an agency fails to create a reasonable system for authorizing overtime, courts award overtime pay. In actuality, the Anderson II court stated that when construing the overtime statute's "regularly scheduled" language, it was appropriate to keep in mind the intent of Congress to pay for overtime. Id. Any statutory or regulatory construction argument is foreclosed in the present case, however, by Doe V. In Doe V we established that OPM's regulation at 5 C.F.R. § 550.111(c), which requires written approval for overtime pay, is a reasonable interpretation of "ordered or approved" in 5 U.S.C. § 5542, and therefore entitled to Chevron deference. Doe V, 372 F.3d at 1358-59. The Doe plaintiffs are asking us to reevaluate that assessment and therefore their arguments must fail.

Finally, Doe V does not set forth a new legal standard that might allow the Doe plaintiffs to make new arguments before the trial court under that standard. Hansen and Richmond, which were our bases for finding that Anderson I had been overruled, were decided in 1981 and 1990, respectively. Thus, the Doe plaintiffs knew about Hansen and Richmond before Doe V was decided and had their opportunity to mount arguments under the principles of those cases.

III.

Turning to the Doe plaintiffs' claim for AUO pay, the Doe plaintiffs argue that the Court of Federal Claims erred in Doe I when it dismissed their claim for AUO pay pursuant to section 5545(c)(2) for lack of jurisdiction. They acknowledge that the statute governing AUO pay contains the discretionary word "may." Despite this discretionary language, the Doe plaintiffs argue that section 5545(c)(2) is money-mandating for two reasons. First, they argue that the word "may" in section 5545(c)(2) gives the agency the discretion to establish how it will pay overtime, but not whether AUO pay will be paid. Thus, an agency has the choice to elect to pay either overtime pay under section 5542(a) or AUO pay under 5545(c)(2). Although the agency can choose between overtime pay and AUO pay, according to the Doe plaintiffs, the agency must pay for hours worked. The Doe plaintiffs' second argument as to why section 5545(c)(2) is money-mandating is that once DOJ makes an election to compensate AUO, any employee meeting the statutory requirements must be paid.

With regard to the merits of their claim for AUO pay, the Doe plaintiffs argue that the language of paragraph 5 of DOJ Order 1551.4A makes AUO pay required for all employees whose work requires "substantial amounts of irregular or occasional

overtime," including attorneys. Based on <u>Hannon v. United States</u>, 29 Fed. Cl. 142 (1993), the Doe plaintiffs argue that because DOJ had a policy to provide AUO pay, the plaintiffs are entitled to AUO pay so long as they qualify under the statute and regulation. They also argue that the list of covered positions in Appendix 1 to DOJ's order is non-exclusive and that therefore attorneys are covered despite not being listed. In response to a question on this point at oral argument, the Doe plaintiffs filed supplemental briefing. In that briefing, they argue that the Appendix 1 list is non-exclusive because, in a 1988 memorandum, the Assistant Attorney General for Administration ("AAGA") authorized the Immigration and Naturalization Service ("INS") Commissioner to extend AUO pay coverage from the positions in the list to include "immigration officers," as defined in 8 C.F.R. § 103.1.[4] Because more positions receive AUO pay than those listed in Appendix 1, the Doe plaintiffs argue, the list is non-exclusive.

---

[4] In 1988, when the AAGA memorandum was written, 8 C.F.R. § 103.1(q) provided:

> Any immigration inspector, immigration examiner, border patrol agent, aircraft pilot, airplane pilot, helicopter pilot, deportation officer, detention officer, detention service officer, detention guard, investigator, special agent, intelligence officer, intelligence agent, general attorney, applications adjudicator, contact representative, Chief Legalization Officer, Supervisory Legalization Officer, Legalization Adjudicator, Legalization Officer and Legalization Assistant, or senior or supervisory officer of such employees is hereby designated as an immigration officer authorized to exercise the powers and duties of such officer as specified by the Act and this chapter.

Notably, "general attorney" is listed in the regulation as being an "immigration officer." However, the 1988 AAGA memorandum specifically exempted "general attorney" from receiving AUO pay. "Immigration officer" is currently defined at 8 C.F.R. § 108.1(b).

The government responds to the Doe plaintiffs' jurisdictional arguments by noting that the jurisdictional and merits inquiry converge in this case. Even if the court below erred by dismissing on jurisdiction, they argue that dismissal on the merits was required without further hearing.

The government counters the Doe plaintiffs' arguments on the merits of the AUO pay claim by contending that section 5545(c)(2) gives "the head of an agency" the discretion to decide if any employee is entitled to AUO pay. The government recounts the legislative history of section 5545(c)(2) and the applicable regulations, which expressly state that AUO pay determinations may not be made retroactively. See 5 C.F.R § 550.161(b). If AUO pay cannot be awarded retroactively, the government argues, then the agency must use its discretion to prospectively determine which employees will be awarded AUO pay. The government argues that DOJ did not exercise its discretion to give attorneys AUO pay. The government turns to Appendix 1 to DOJ Order 1551.4A, which the government notes did not list attorneys as a group authorized to receive AUO pay. This list, the government argues, is exclusive because the order sets forth procedures for adding positions to the list. It notes that these procedures were followed when the INS positions mentioned in the 1988 AAGA memorandum were added to the list. Further, the government points out that the 1988 AAGA memorandum authorized AUO pay for "immigration officers," as defined in 8 C.F.R. § 103.1, but specifically exempted "general attorneys" from coverage. The government also argues that the Doe plaintiffs' position, if adopted, would effectively nullify DOJ Order 1551.4A, by making it the courts' duty to determine which positions meet statutory and regulatory requirements for AUO pay.

The Court of Federal Claims's jurisdiction pursuant to the Tucker Act is derived from the underlying substantive law that is the subject of a suit. Samish, 419 F.3d 1355, 1364 (2005). A substantive law provides jurisdiction only if it "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." United States v. Mitchell, 463 U.S. 206, 217 (1983) ("Mitchell II"). This requirement is commonly termed as the "money-mandating" requirement. Id.; Fisher v. United States, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc in relevant part). The "fair interpretation" standard articulated in Mitchell II is met when a statute is "reasonably amenable to the reading that it mandates a right of recovery in damages." United States v. White Mountain Apache Tribe, 537 U.S. 465, 472-73 (2003). Thus, jurisdiction exists under the Tucker Act so long as there is a "fair inference" that a statute is money-mandating. Id. at 473; see also Samish, 419 F.3d at 1364. We have acknowledged that the jurisdictional inquiry and merits inquiry may blend together under the Tucker Act. Fisher, 402 F.3d at 1173. In Fisher we clarified the distinction between the jurisdictional and merits inquiry under the statute. 402 F.3d at 1175-76. The jurisdictional requirement is met if a statute or regulation is "money-mandating." Id. at 1175. However, a party bringing suit under the Tucker Act may then lose on the merits if he or she is not one of the persons entitled to pay under the statute or regulation. See Fisher, 402 F.3d at 1176 (citing Banks v. Garrett, 901 F.2d 1084, 1087-88 (Fed. Cir. 1990); Sawyer v. United States, 930 F.2d 1577 (Fed. Cir. 1991)).

A statute is not money-mandating when it gives the government complete discretion over the decision whether or not to pay an individual or group. See Doe v. United States, 100 F.3d 1576, 1582 (Fed. Cir. 1996); see also McBryde v. United

<u>States</u>, 299 F.3d 1357, 1362 (Fed. Cir. 2002). There is a presumption that the use of the word "may" in a statute creates discretion. <u>McBryde</u>, 299 F.3d at 1362. However, this presumption of discretion may be rebutted by "the intent of Congress and other inferences that we may rationally draw from the structure and purpose of the statute at hand." <u>Id.</u> We have found that a statute is not wholly discretionary, even if it uses the word "may" when an analysis of congressional intent or the structure and purpose of the statute reveal one of the following: (1) the statute has "clear standards for paying" money to recipients, (2) the statute specifies "precise amounts" to be paid, or (3) the statute compels payment once certain conditions precedent are met. <u>Samish</u>, 419 F.3d at 1364-65 (citing <u>Perri v. United States</u>, 340 F.3d 1337, 1342-43 (Fed. Cir. 2003)); <u>see also</u> <u>Fisher</u>, 402 F.3d at 1175 (finding that a statute is money-mandating because it mandates payment when the statutory requirements are met).

The first issue before us is whether a statute using the word "may," as used in 5 U.S.C. § 5545(c)(2), is discretionary. We find that the Doe plaintiffs are correct that 5 U.S.C. § 5545(c)(2) is a money-mandating statute. As previously noted, section 5545(c)(2) provides:

> The head of an agency, with the approval of the Office of Personnel Management, <u>may</u> provide that—
> . . .
> (2) an employee in a position in which the hours of duty cannot be controlled administratively, and which requires substantial amounts of irregular, unscheduled overtime duty with the employee generally being responsible for recognizing, without supervision, circumstances which require the employee to remain on duty, <u>shall</u> receive premium pay for this duty on an annual basis instead of premium pay provided by other provisions of this subchapter, except for regularly scheduled overtime, night, and Sunday duty, and for holiday duty. . . .

By using the word "may," the statute gives the "head of an agency" the discretion to allow AUO pay for employees in particular positions, although this discretion is somewhat limited because the agency may only award AUO pay to employees in positions that meet the requirements listed in section 5545(c)(2). Further, once the agency makes a determination that a particular position is entitled to AUO pay, the employee "shall" receive premium pay under the statute. Thus, the statute is money-mandating because once a condition is met, namely that the head of an agency states that a position meets the criteria listed in subsection (c)(2), the statute requires payment to employees with that position. See Fisher, 402 F.3d at 1175; Samish, 419 F.3d at 1364-65 (citing Perri, 340 F.3d at 1342-43). Therefore, the Court of Federal Claims erred to the extent that it dismissed the Doe plaintiffs' claim for AUO pay for lack of jurisdiction in Doe I.

However, although the court erred in dismissing the Doe plaintiffs' AUO pay claim for lack of jurisdiction, the error was harmless because the claim should have been dismissed on the merits. While section 5545(c)(2) may be money-mandating once certain conditions are met, the Court of Federal Claims correctly found that it does not require payment to the Doe plaintiffs. The regulations set forth at 5 C.F.R. §§ 550.151-.163 do not state that any person meeting the statutory requirements for AUO pay is entitled to premium pay. Instead, the regulations establish a system whereby agencies must decide if a particular position meets the requirements of the statute before employees with that position may be awarded AUO pay. See 5 C.F.R. § 550.153(a). The regulations require that the head of each agency or a designated person determine which employees meet the statutory requirements for AUO pay prospectively. 5 C.F.R.

§ 550.161(b). This determination must be based on the criteria set forth at 5 C.F.R. §§ 550.151-.153. Pursuant to this regulatory mandate, DOJ stated in paragraph 7 of DOJ Order 1551.4A that the positions listed in Appendix 1 to the order are covered positions. "Attorney" is not one of the listed covered positions. Contrary to the Doe plaintiffs' arguments, the Appendix 1 list is an exclusive list except to the extent that positions are authorized to receive AUO pay under the procedures set forth in Paragraph 7 of DOJ Order 1551.4A. Paragraph 7 states that the AAGA "will authorize [AUO] pay for additional classes of positions upon the request of a bureau director which shows that the positions meet the criteria set out in paragraph 6." Thus, the only way to receive AUO pay for a position not on the Appendix 1 list is by seeking and receiving authorization from the AAGA. Contrary to the Doe plaintiffs' arguments, the 1988 AAGA memorandum cited in their supplemental authority actually illustrates the exclusive nature of the Appendix 1 list. The 1988 AAGA memorandum followed the procedures set forth in Paragraph 7 of DOJ Order 1551.4A to authorize the position of "immigration officer" as defined in 8 C.F.R. § 103.1 to receive AUO pay. Thus, 5 U.S.C. § 5545(c)(2) does not require payment to all qualified persons once the agency has exercised its discretion to implement a program. Instead, it requires payment once an agency has designated a position as qualified. Here, the agency did not designate "attorney" as a qualified position and the Doe plaintiffs admit that they do not fall under one of the six qualified positions listed in Appendix 1. Therefore, the Doe plaintiffs' claims should have been dismissed on the merits because, as attorneys, they have no basis for entitlement to AUO pay under § 5545(c)(2) or 5 C.F.R. §§ 550.151-.163.

Although <u>Hannon</u> involves the same statute and the same DOJ order, it is unpersuasive in this case. In <u>Hannon</u>, the Court of Federal Claims found that it had jurisdiction under section 5545(c)(2) to hear claims for AUO pay brought by Diversion Investigators for the Drug Enforcement Agency. 29 Fed. Cl. at 150. The Diversion Investigators argued that they were "criminal investigators" under DOJ Order 1551.4A and therefore should have received AUO pay. <u>Id.</u> at 145. In response to a jurisdictional challenge, the court found that section 5545(c)(2) was money-mandating once a program was implemented. <u>Id.</u> at 147-48. DOJ Order 1551.4A demonstrated that DOJ had implemented a program for AUO. <u>Id.</u> at 148. Therefore, the court found that it had jurisdiction to evaluate whether or not the Diversion Investigators were "criminal investigators" under DOJ Order 1551.4A and therefore entitled to compensation under the statute. <u>See</u> <u>id.</u> The present case is distinguishable from the <u>Hannon</u> case because the Doe plaintiffs do not claim that they fall into one of the six covered positions listed in Appendix A of DOJ Order 1551.4A. Therefore, although section 5545(c)(2) gives the Court of Federal Claims jurisdiction as stated in <u>Hannon</u>, the Doe plaintiffs' claim should have been dismissed on the merits because the Doe plaintiffs do not hold a position covered by DOJ Order 1551.4A.

IV.

With regard to the Doe plaintiffs' claim for holiday pay, the Doe plaintiffs argue that their claim was not considered in <u>Doe IV</u> or <u>Doe V</u> and therefore should not have been rejected on summary judgment. They note that the word "holiday" did not even appear in the briefing at the summary judgment stage. Further, the Doe plaintiffs argue that the government conceded that a different standard applies to holiday pay and

overtime pay under section 5542. More specifically, they note that the government stated that holiday work must be "scheduled in advance" rather than "ordered or approved" like overtime pay under section 5542. The Doe plaintiffs then dedicate the remainder of their brief to arguments as to why their holiday work was "regularly scheduled."

The government argues that the Doe plaintiffs' arguments regarding holiday pay are new on appeal and therefore inappropriate. Further, the government argues that the Doe plaintiffs chose to merge their arguments on holiday pay with their overtime pay arguments and thus submitted themselves to the decision in Doe V. In support of this argument, the government notes that the same arguments about inducement that the Doe plaintiffs made in the Court of Federal Claims in connection with their overtime pay claim under section 5542(a) were made in connection with their holiday pay claim under section 5546(b). The government also argues that the plaintiffs filed a cross-motion for summary judgment rather than a partial motion for summary judgment in Doe IV and therefore expressly joined their holiday pay claim to their overtime pay claim.

Finally, the government argues that if we were to allow the Doe plaintiffs to reopen their holiday pay claims, the claims would fail as a matter of law. In support of this argument, the government points to the legislative history of the holiday pay statute, which it says shows that mere performance of holiday hours without prior formal scheduling does not entitle a person to holiday pay.

Although Doe III, Doe IV, and Doe V make no mention of the holiday pay claim pursuant to section 5546(b), we agree with the Court of Federal Claims that the Doe plaintiffs' claim for holiday pay is barred by our decision in Doe V. Our review of the

record reveals that the Doe plaintiffs did not seek to separate their claim for holiday pay from their claim for overtime pay until after Doe V issued. In their initial complaint, the Doe plaintiffs stated in their holiday pay count that they had been induced and encouraged to work on holidays, just as they claimed in their overtime count that they were induced and encouraged to work overtime. Compl. at 16, 20. Instead of distinguishing the theory of liability for the holiday pay claim and the overtime pay claim, the Doe plaintiffs explicitly bound the two claims together by filing a motion for summary judgment on liability—not partial summary judgment—and then presenting their inducement and encouragement arguments. The Doe III decision thus granted the Doe plaintiffs' motion for summary judgment on liability for both claims even though only section 5542(a) was explicitly addressed. 54 Fed. Cl. at 418. In their opposition to the government's motion for interlocutory appeal, the Doe plaintiffs did not argue that their holiday pay claim had not been addressed by the Doe III decision. In addition, in their briefing in Doe V and the subsequent petition for rehearing, the Doe plaintiffs likewise did not mention the holiday pay claim. Under the circumstances, we conclude that the Doe plaintiffs were content to have their holiday pay claim pursuant to section 5546(b) joined with their claim for overtime pay pursuant to section 5542(a) until the Doe III liability determination was reversed in Doe V. Only when the liability determination was reversed on appeal did the Doe plaintiffs raise their argument that the theory for liability on the holiday pay claim was distinct from the overtime pay claim. The Doe plaintiffs should have raised the issue of the distinction between their holiday pay claim and their overtime pay claim7 before that time, however. Because they did not, the issue was waived. See United States v. Husband, 312 F.3d 247, 250-51 (7th Cir. 2002) (stating

05-5104                                                24

that, after a first appeal, "any issue that could have been but was not raised on appeal is waived . . . ."); United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993) (stating that when an appellate mandate has issued, the mandate rule "forecloses litigation of issues decided by the district court but foregone on appeal or otherwise waived, for example because they were not raised in the district court").

## CONCLUSION

We affirm the Court of Federal Claims's entry of summary judgment in favor of the government on the Doe plaintiffs' section 5542 overtime pay and section 5546(b) holiday pay claims. Although we find that the Court of Federal Claims erred in ruling that it lacked jurisdiction over the Doe plaintiffs' claim for AUO pay under section 5545(c)(2), the error was harmless because the claim should have been dismissed on the merits. We therefore affirm the court's dismissal of the Doe plaintiffs' claim for AUO pay, but find that the dismissal should have been based on the merits of the claim rather than on lack of jurisdiction.

## COSTS

Each party shall bear its own costs.

## AFFIRMED