Anne Marie **WILBURN**, Plaintiff,

v.

The **UNITED STATES**, Defendant.

No. 11–320 C.

United States Court of Federal Claims.

Oct. 7, 2011.

Anne Marie Wilburn, Miami, FL, Plaintiff, pro se.

David Alan Levitt, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, D.C., for Defendant; of counsel, Michelle Cordeiro, Office of General Counsel, Financial Management Service, and Vanessa Burton, Litigation Counsel, Department of Education.

## OPINION

DAMICH, Judge:

In this action, styled a "Petition for Injunctive Relief to Stop Administrative Offset From Being Taken From Federal Government Retirement Annuity," Plaintiff Anne Marie Wilburn, acting pro se, seeks to bar the federal government from the continued collection on Plaintiff's overdue federal student loans via an offset to her monthly government annuity. As grounds for injunctive relief, she alleges violations of her Fifth Amendment rights to equal protection and due process, violation of the notice requirements of the Debt Collection Improvement Act of 1996, 31 U.S.C. § 3716(a) and (c)(7)(A) (in relevant part), and "extreme [financial] hardship." Compl. at 14. In her complaint,

she also asks for such other relief as "the Court may deem appropriate." *Id.* at 15.

Defendant has moved to dismiss the complaint pursuant to Rules 12(b)(1) and (b)(6) of the Rules of the Court of Federal Claims.[1]

For the reasons explained below, the court GRANTS Defendant's motion to dismiss.

## I. Background

From 1992 through 1997, Plaintiff obtained federal student loans with a principal amount of $65,000[2] to finance her education at the University of Miami in hopes of improving her career prospects. Compl. at 11; *cf.* Def.'s Mot. to Dismiss at 3. In 1999, Plaintiff consolidated her student loans, which then had an outstanding balance of $99,095, with Sallie Mae (Student Loan Marketing Association). Def.'s Mot. to Dismiss at 3. Plaintiff was employed by the federal government for several years, but she lost her job when her position was eliminated; unable to secure alternative employment, Plaintiff entered retirement. Compl. at 11. Plaintiff receives a retirement annuity of $2,781.67 per month. *Id.* at 12. Plaintiff alleges that her government annuity is her only source of income. *Id.*

Prior to the elimination of her job with the federal government, Plaintiff was making payments on her loans. Compl. at 11; Def.'s Mot. to Dismiss at 3. In retirement, Plaintiff found it difficult to make her loan payments and still cover her necessary living expenses. Compl. at 11. In an attempt to avoid defaulting on her loans, Plaintiff alleges that she liquidated her stock portfolio, sold personal property, and attempted to consolidate her loans a second time at a lower interest rate. *Id.* Plaintiff's attempt to re-consolidate the loans to obtain a lower interest rate was denied by Sallie Mae on the grounds that she was only allowed one consolidation during the lifetime of her loan. *Id.* As of the filing of her complaint, Plaintiff's total outstanding debt, including accrued interest, was approximately $220,000. *Id.* at 12.

---

1. Plaintiff failed to file any response to Defendant's motion to dismiss, despite the court's sua sponte grant of an enlargement of time even after Plaintiff's first deadline passed without any filing or other communication with the court.

2. Defendant contends that the principal amount of the student loans was $88,541. Def.'s Mot. to Dis. at 3.

Great Lakes Higher Education Guarantee Corporation ("Great Lakes") served as the guaranty agency on Plaintiff's consolidated loan. Def.'s Mot. to Dismiss at 4–5 n.3. Upon Plaintiff's default, Sallie Mae assigned the loan to Great Lakes in June 2008.[3] Id. Attachment 2, ¶ 5. In July 2010, Great Lakes notified Plaintiff of its intention to collect on her debt through the Treasury Offset Program ("TOP") of the U.S. Department of the Treasury. Id. ¶ 6. The offset is authorized pursuant to 31 U.S.C. § 3716, which provides, inter alia, that notice must be provided to the debtor of "a description of the type and amount of the payment otherwise payable to the payee against which the offset was executed," the identity of the creditor agency, and a contact point within the creditor agency to address "concerns regarding the offset." Id. at 3716(c)(7)(A).

On January 3, 2011, Plaintiff was notified by the Department of Treasury's Financial Management Service ("FMS") that, unless she contacted Great Lakes prior to March 1, 2011, and met its requirements to stop the offset process, FMS would begin withholding 25% of her monthly retirement annuity payment, beginning in March 2011, to apply it toward her outstanding debt. It would continue doing so until the outstanding loan balance was repaid. Compl. at 17, Exh. 1; Def.'s Mot. to Dismiss at 4. The FMS notification also advised Plaintiff to contact her "Creditor Agency," the "US Department of Education C/O Great Lakes Higher Ed Guar Corp.," and provided telephone contact numbers therefor. Compl. at 17, Exh. 1.

Plaintiff concedes that the debt is valid and acknowledges her duty to repay the loan. Compl. at 4.

## II. Jurisdiction

Whether a court possesses jurisdiction is a threshold matter in every case. See Steel Co. v. Citizens for a Better Env't, 523 U.S. 83, 94–95, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998). "Subject-matter jurisdiction may be challenged at any time by the parties or by the court sua sponte." Folden v. United States, 379 F.3d 1344, 1354 (Fed.Cir.2004). While pro se parties are held to "less stringent standards," Haines v. Kerner, 404 U.S. 519, 520, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972), "a court may not similarly take a liberal view of . . . jurisdictional requirement[s] and set a different rule for pro se litigants only." Kelley v. Sec'y of Labor, 812 F.2d 1378, 1380 (Fed.Cir.1987) (emphasis added).

The jurisdiction of the Court of Federal Claims is prescribed by the Tucker Act, 28 U.S.C. § 1491 (2006). Under the Tucker Act, the court's jurisdiction is limited to monetary claims "against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." Id. § 1491(a)(1). The Tucker Act, however, is only a jurisdictional statute and does not create any independent substantive rights enforceable against the United States for money damages. See, e.g., United States v. Mitchell, 463 U.S. 206, 216, 103 S.Ct. 2961, 77 L.Ed.2d 580 (1983); United States v. Testan, 424 U.S. 392, 398, 96 S.Ct. 948, 47 L.Ed.2d 114 (1976) ("[T]he [Tucker] Act merely confers jurisdiction upon [the Court of Federal Claims] whenever the substantive right exists."). In other words, not every claim involving the United States Constitution or an Act of Congress is cognizable under the Tucker Act. Rather, a plaintiff's claim must be for money damages based on a "money-mandating" source of substantive law. See Jan's Helicopter Serv., Inc. v. FAA, 525 F.3d 1299, 1309 (Fed.Cir.2008). If the court concludes that a plaintiff's claim is not based on a "money-mandating" source of substantive law, then the claim falls outside its jurisdiction. Metz v. United States, 466 F.3d 991, 997 (Fed.Cir.2006).

When deciding a motion to dismiss pursuant to RCFC 12(b)(1), the court is "obligated

---

**3.** According to Defendant, upon the default of the borrower, Great Lakes was obliged to repay the outstanding debt to the financing institution. The United States Department of Education, however, "reinsures a portion of the debt and reimburses Great Lakes for a portion of the debt." Def.'s Mot. at 5. Thus, Plaintiff may have a remaining debt to both Great Lakes and the Department of Education. Id.

to assume all factual allegations to be true and to draw all reasonable inferences in [the] plaintiff's favor." *Henke v. United States*, 60 F.3d 795, 797 (Fed.Cir.1995). Nevertheless, a plaintiff still bears the burden of establishing jurisdiction by a preponderance of the evidence. *See Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir.1988) ("[O]nce the [trial] court's subject matter jurisdiction [is] put in question, it [is] incumbent upon [the plaintiff] to come forward with evidence establishing the court's jurisdiction."). "If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." RCFC 12(h)(3).

### III. Discussion

Plaintiff makes no readily apparent claim for money damages, but rather seeks to enjoin further collection of her student loan debt under the TOP. She argues that an injunction is warranted because the administrative offset against her annuity violates her equal protection rights, on the grounds that the TOP applies only to persons receiving disbursements from the federal government rather than to other persons who owe debts to the government and that the percentage offset against retirement payments is greater than that against salary and Social Security payments. She further claims that she was not afforded a right to a hearing before the offset was initiated, contrary to the Due Process Clause of the Fifth Amendment. She also claims that she was not given appropriate notice under the Debt Collection Act of 1996 in three respects: 1) she was not provided a contact point within Sallie Mae, which she asserts is the correct "creditor agency," 2) the telephone number to discuss her debt with Great Lakes was improper (because it was actually a number for Great Lakes's sub-contracted collection agency), and 3) the FMS notice was insufficiently detailed as to the entity receiving the funds subject to the offset and the number of offset payments to be applied against her annuity.

■ Neither Plaintiffs claim for relief—an injunction against further offsets—nor her allegations of Constitutional and statutory violations, however, can withstand the Gov-

ernment's motion to dismiss for lack of subject matter jurisdiction.

■ First, with the general exception of bid protests, this court lacks the authority to grant equitable relief, such as injunctions and declaratory judgments, except where such relief is "an incident of and collateral to" a money judgment. *James v. Caldera*, 159 F.3d 573, 580 (Fed.Cir.1999) (quoting 28 U.S.C. § 1491(a)(2)).

Plaintiff makes no appeal in her complaint, however, for money damages to be paid *by* the government *to* her, but rather only seeks to bar the government from continuing to withhold a portion of her monthly retirement annuity. "She needs the money being taken from her retirement annuity as a result of the administrative setoff and hopes that there is some other way that the Government can recover the money other than taking it from her monthly retirement annuity." Compl. at 14.

■ Even if her Complaint could liberally be construed, in accord with the leniency afforded pro se plaintiffs, as seeking a money judgment, none of the provisions—Constitutional or statutory—that she cites provides for money damages in the event of its violation. "[T]he word 'claim' [in the Tucker Act] carries with it the historical limitation that it must assert a right to presently due money." *Overall Roofing & Constr., Inc. v. United States*, 929 F.2d 687, 689 (Fed.Cir.1991). First, as regards her Constitutional claims, neither the Equal Protection Clause nor the Due Process Clause of the Fifth Amendment is money-mandating. *LeBlanc v. United States*, 50 F.3d 1025, 1028 (Fed.Cir.1995) (Equal Protection); *James*, 159 F.3d at 581 (Due Process), *see also Semper v. United States*, 100 Fed.Cl. 621, 633–34 (Fed.Cl.2011).

■ With respect to Plaintiff's claim that she was not provided proper notice under § 3716(c)(7)(A), this court has no jurisdiction unless violations of the provision of that statute entitle her to money damages. There are two steps to the inquiry whether a statute is money-mandating. *Samish Indian Nation v. United States*, 657 F.3d 1330, 1335–36 (Fed.Cir.2011). The first step is to determine whether the law in question im-

poses "specific obligations" on the government. The second step is an inquiry

"whether the relevant source of substantive law can be fairly interpreted as mandating compensation for damages sustained as a result of a breach of the duties the governing law imposes." The Court of Federal Claims has jurisdiction if the substantive law at issue is "reasonably amenable to the reading that it mandates a right of recovery in damages."

*Id.* (citations omitted).

The notice provisions of the Debt Collection Improvement Act are bereft of any indication that a payee subject to the Treasury Offset Program may obtain money damages from the government if the notice given the payee is deficient. Plaintiff's argument regarding this statute is akin to her general Due Process complaint addressed above and likewise founders on the absence of a money-mandating remedy. As important as the notice provisions may be to an individual in Plaintiff's position, there is no reasonable basis for inferring that the alleged failure of FMS to meet all the specifics of the notice requirements in the Debt Collection Act entitles a plaintiff to an award of monetary damages for their violation. Moreover, a court would lack any standard by which to measure damages for the notice failures alleged here, a further indication that the statute is not money-mandating. *See id.; Doe v. United States,* 463 F.3d 1314, 1324 (Fed.Cir.2006), *cert. denied,* 549 U.S. 1321, 127 S.Ct. 1910, 167 L.Ed.2d 565 (2007).

In any event, it seems evident that the FMS notice, like the previous notice given to Plaintiff by Great Lakes, comported with the notice requirements of the Act. Plaintiff was informed that Great Lakes was the guaranty agency; she was given a phone number to contact Great Lakes to discuss her defaulted loan (that it was the number to Great Lakes's collection agent is not grounds for alleging that she was not provided a contact point within the agency); and she was provided a phone number for FMS itself. Compl., Exh. 1. Thus, it appears that Plain-

tiff's complaint also fails to state a claim upon which relief can be granted, as argued in the alternative via Defendant's motion to dismiss pursuant to RCFC 12(b)(6). This court need not reach that determination on the merits, however, because of the overarching lack of jurisdiction over Plaintiff's call for injunctive relief. *See Martin v. United States,* 99 Fed. Cl. 627, 630–31 (2011).

Finally, as difficult as Plaintiff's financial situation may be, there is no indication that financial hardship is a money-mandating cause of action under the Debt Collection Act.

## IV. Conclusion

For the reasons stated above, Defendant's motion to dismiss for lack of jurisdiction is GRANTED. The Clerk of Court is directed to dismiss Plaintiff's complaint without prejudice.